## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| PARDEEP KUMAR,<br><br>                Plaintiff,<br><br>vs.<br><br>VIOLET SCHILDT and<br>PATRICK W. SCHILDT<br>(a/k/a PATRICK W. SCHILDT,<br>JR.), individually and d/b/a<br>GLACIER WAY C-STORE, LLC,<br>DARRYL LACOUNTE, Director of<br>Bureau of Indian Affairs for the<br>Department of Interior,<br><br>                Defendants. | **CV-22-54-GF-BMM**<br><br><br>**ORDER** |

## INTRODUCTION

Defendants Patrick W. Schildt and Violet Schildt (collectively "Schildts") have filed a Motion to Dismiss for lack of jurisdiction. (Doc. 12.) Plaintiff Pardeep Kumar ("Kumar") opposes this motion. (Doc. 16.) The Court held a hearing on this motion on August 15, 2022. (Doc. 20.)

## FACTUAL AND LEGAL BACKGROUND

Schildts entered into a Contract for Deed ("the Contract") with Kumar on March 31, 2020, to sell trust land to Kumar located within the exterior boundaries of the Blackfeet Reservation. (Doc. 4-1 at 2.) The Contract provided that Kumar would purchase Schildts' business—Glacier Way C-Store, LLC ("the Subject Property")—including the real estate, inventory, equipment, and supplies therein. (*Id.* at 3.)

The Contract provided that Schildts would finance the purchase for the total amount of $1,100,000. (*Id.*) Kumar made the required down payment of $50,000, has paid all monthly installments, and otherwise has complied fully with the Contract. (*Id.*) Schildts agreed, in return, to provide for Kumar's quiet use and enjoyment of the Subject Property. (*Id.*)

Kumar has paid $314,000 under the Contract, including the down payment of $50,000 and monthly installments through May 20, 2022. (*Id.*) Kumar also has invested approximately $1,200,000 in the Subject Property via improvements and inventory. (*Id.*) Violet Schildt has removed $66,920.02 to date from Kumar's account used for food stamp receipts. (*Id.*)

The Subject Property is held in trust under the provisions of the Act of June 18, 1934 (48 Stat. 984) or the Act of June 26, 1936 (49 Stat. 1967). (*Id.* at 4.) These federal laws require Schildts, who are enrolled members of the Blackfeet

Tribe, to obtain the Secretary of the Interior's approval for sale of trust land. 25 U.S.C. § 5134. Schildts failed to obtain this approval and the Contract made no mention of the statutory requirement. (Doc. 4-1 at 4.) Kumar asserts that Schildts should have been aware of this requirement, as their attorney throughout the sale previously had been employed as counsel for the Blackfeet Nation. (*Id.*)

Kumar was unrepresented during the sale proceedings and only inquired about Schildts' compliance with the federal regulation several months later in December 2021. (*Id.* at 4.) Neither Schildts, nor their counsel, responded to Kumar's letters. (*Id.*)

Schildts entered into two separate sale agreements on May 4, 2021 ("the Sale Agreements") with the Blackfeet Tribal Business Council ("the Council") to sell the Subject Property to the Council. (*Id.* at 5.) The Council authorized entry into the Sale Agreements via Resolution No. 377-2022 for the first sale agreement and Resolution No. 378-2022 for the second. (*Id.* at 5–6.) Resolution No. 377-2022 provided for a total purchase price of $7,705,600 and provides that the Council will provide an earnest money deposit of $700,000, at a time not specified, to be held in escrow pending closing. (*Id.*) Resolution No.  378-2022 authorized the Council to enter into a sale agreement for a total purchase price of $2,246,800. (*Id.* at 6.) The corresponding Sale Agreement includes the same terms, except that the amount of the earnest money deposit is $200,000. (*Id.*)

3

Kumar sent a second inquiry, this time through counsel, on May 27, 2021, informing Schildts of his intention to file this action and once again requesting evidence of Schildts' compliance with applicable regulations. (*Id.* at 5.) Kumar's counsel simultaneously sent letters to the Bureau of Indian Affairs ("BIA"), Rocky Mountain Regional Office, enclosing a copy of the Contract and requesting that the BIA confirm that the transaction required the approval of the Secretary and, if so, determine whether the Secretary approved the transaction. (*Id.*) Kumar failed to receive a response to any of these letters. (*Id.*)

Schildts delivered a letter to Kumar on June 5, 2022, which purported to be a notice of termination of the Contract and "immediate eviction" from the Subject Property. Schildts and other individuals allegedly forcibly removed Kumar from the Subject Property on that same day, including the portion of the Subject Property in which Kumar resided. (Doc. 4-1 at 6.) The Contract provides that, "[i]n case of Sellers' failure to deliver title pursuant hereto, the amount of all payments made by Purchaser shall be a lien upon said property in favor of Purchaser to secure the return of said payments to Purchaser, except insofar as there shall exist a claim against any title insurance." (Contract for Deed ¶ 14.)

Kumar's Complaint contains five counts. (Doc. 1.) He seeks declaratory judgment that, absent approval by the Secretary, Schildts cannot perform their obligation under the Contract to transfer title to the Subject Property to Kumar. (*Id.*

at 10.) Kumar also seeks a declaration that he has a lien on the Subject Property in the amount of all payments he has made to Schildts to secure the return of such payments to him, plus interest and attorney's fees, and that this lien shall attach to the proceeds payable to Schildts pursuant to the Sale Agreements. (*Id.*) Kumar also alleges breach of contract and unjust enrichment. Kumar asserts that these two claims justify imposing a constructive trust on the earnest money the Council paid to Schildts under the Sales Agreements. (*Id.* at 11–12.)

Kumar's also seeks a preliminary injunction to prevent Schildts from taking possession of any of the earnest money advanced by the Council pending resolution of Plaintiff's claim for imposition of a constructive trust on such funds. (Doc. 1 at 12.) Finally, Kumar claims that Schildts' actions violated 15 U.S.C. § 1 and § 3 of the Sherman Antitrust Act. (*Id.* at 13.)

## LEGAL STANDARDS

Schildts move to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). In reviewing a facial attack, a court must take as true the allegations in the plaintiff's complaint. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## DISCUSSION

Schildts move to dismiss for failure to state a claim and lack of jurisdiction, arguing that Kumar fails to plead a basis for federal jurisdiction through his deficient antitrust claims. (Doc. 13.) District courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Kumar originally pled federal question jurisdiction over his Sherman Antitrust Act Claims. (Doc. 1 at 2 ("This Court has jurisdiction of this matter under . . . 15 USC § 1 & 3).) Kumar conceded in his response to Schildts' motion that he insufficiently pled the elements of his antitrust claims. (Doc. 16 at 13.)

Kumar argues for the first time in his response brief to Schildts' motion that his breach of contract claim and unjust enrichment claim involve questions of federal law pursuant to 28 U.S.C. § 1353. (Doc. 16 at 4.) This statute provides that district courts shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty. 28 U.S.C. § 1353.

Kumar asserts that his claims invoke Section 1353 jurisdiction because they involve the rights of Schildts, who are "of Indian blood or descent," to the Subject Property, which is an allotment of treaty land. (Doc. 16 at 5–6.) Schildts dispute Kumar's reading of Section 1353 and argue that, to bring a suit under Section

6

1353, the *plaintiff* must be "in whole or in part of Indian blood or descent." (Doc. 17 at 3.) Kumar does not assert that he is of Indian blood or descent within the meaning of Section 1353.

The text of Section 1353, on its face, fails to address whether the party bringing suit must be a person "of Indian blood or descent." *See* 28 U.S.C. § 1353. The legislative intent of Section 1353 supports Schildts' position, however, that Section 1353 jurisdiction only covers suits brought by people of Indian blood or descent. Section 1353 presents a recodification of 25 U.S.C. § 345. *Scholder v. United States*, 428 F.2d 1123, 1126 (9th Cir. 1970). The Ninth Circuit has determined that much of the analysis of Section 345 applies with equal force to Section 1353.  *See Jachetta v. United States*, 653 F.3d 898, 906 (9th Cir. 2011) (determining that courts "need not analyze [Section 1353] separately" from Section 345).

Section 345, also known as the General Allotment Act, "authorizes Indians to commence and prosecute actions 'in relation to their right' to land under any allotment act or under any grant made by Congress." *Arenas v. United States*, 322 U.S. 419, 429 (1944). The suits contemplated by Section 345 were "designed to protect or preserve an allotment once issued" to an Indian person. *Scholder v. United States*, 428 F.2d 1123, 1126 (9th Cir. 1970). Section 345 and, subsequently,

Section 1353, intends to protect the land interests of Indian persons and their descendants. *United States v. Pierce*, 235 F.2d 885, 888 (9th Cir. 1956).

Case law further supports a construction of Section 1353 that limits its jurisdiction to cases brought by persons of Indian blood or descent to determine their right to an allotment. The U.S. Supreme Court in *Mottaz* confirmed that "federal courts may have general subject-matter jurisdiction over claims to quiet title to allotments *brought by Indians*." *United States v. Mottaz*, 476 U.S. 834, 846 (1986) (emphasis added). The Ninth Circuit mirrored this language in *K2 America*, a suit between two non-Indian Montana corporations regarding oil and gas leases on allotment land.  *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1026 (9th Cir. 2011). *K2 America* held that Section 1353 did not "authorize suit by state corporations such as K2," because Section 1353 "concern[s] suits *by* persons who are 'in whole or in part of Indian blood or descent.'" *Id.* at 1033 (emphasis added) (citing *United States v. Preston*, 352 F.2d 352, 355–56 (9th Cir. 1965)).

Kumar argues that *K2 America* proves factually distinguishable from his claims because, in *K2 America*, "neither company was an Indian party," whereas here "Indians are party to this case" because Schildts are Blackfeet tribal members. (Doc. 16 at 6.) Courts have been similarly dismissive, however, when it comes to claims brought by non-Indian parties against Indian defendants. *Preston* involved a claim by non-Indian plaintiffs against the United States and an individual

8

defendant who was an enrolled tribal member of the Agua Caliente Band of Mission Indians. *Preston*, 352 F.2d at 353. After losing a prior federal action seeking allotment of reservation lands, Agua Caliente tribal members encouraged plaintiffs to bring a new case. *Id.* Despite the plaintiffs' alignment with tribal interests and close coordination with the tribe, the Ninth Circuit determined that Section 345 did not confer jurisdiction because it had "no relation whatever to the action[] brought" by non-Indian plaintiffs. *Id.* at 355. *Preston* affirmed that Section 1353 jurisdiction only extends to cases "brought by persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land." *Id.*

The Eastern District of Washington in *Grondal v. United States* similarly dismissed the cross-claims of non-Indian party Wapato Heritage against the federal government and the Colville Tribes over a dispute regarding an allotment interest Wapato Heritage inherited from a person of Indian blood or descent. 513 F. Supp. 3d 1262, 1283 (E.D. Wash. 2021). The court based its dismissal on the fact that "Wapato Heritage is not a person 'in whole or in part of Indian blood or descent.'" *Id.* (citing *Preston*, 352 F.2d at 355–356). *Grondal* repeated *Preston*'s holding "that § 365 confers no federal jurisdiction over suit by non-Indians." *Id.*

Courts have dismissed claims for lack of jurisdiction under Section 1353 even where Indian corporations or non-governmental organizations initiated the suit. In *San Xavier Development Authority v. Charles*, the Ninth Circuit held that

9

the plaintiff could not invoke Section 1353 jurisdiction despite its status as a non-profit corporation chartered by the federally recognized San Xavier tribe. 237 F.3d 1149, 1150–51, 1153 (9th Cir. 2001). The court in *San Xavier* confirmed that a "non-Indian party to a contract does not have the right to employ statutory remedies enacted to protect Indian tribes and their members." *Id.* at 1153.

Kumar attempts to use Section 1353 not for its intended purpose, but rather as a method of getting his common law claims into federal court. Congress intended Section 1353 to protect the land rights of Indian persons. *Pierce*, 235 F.2d at 888. Permitting non-Indian plaintiffs challenging Indian persons' land rights to avail themselves of Section 1353 jurisdiction would defy Congressional intent and undermine the statute's remedial goals. Section 1353 cannot provide a basis for Kumar's claims as a non-Indian. *San Xavier*, 237 F.3d at 1153.

Federal-question jurisdiction may extend to some claims by non-Indians against Indian persons. Federal-question jurisdiction requires a real "controversy respecting [a federal law's] validity, construction, or effect." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). *Grable* emphasized that requiring an "actual dispute about federal law was 'especially' important in 'suit[s] involving rights to land acquired under a law of the United States.'" *Id.* at 322 n. 3 (quoting *Shulthis v. McDougal,* 225 U.S. 561, 569 (1912)). The U.S. Supreme Court reasoned that without this requirement, every lawsuit to establish or contest

title in the central and western United States would arise under federal law. *Grable*, 545 U.S. at 322 n. 3. The Ninth Circuit in *K2 America* similarly affirmed that "[t]he mere fact that the Secretary of the Interior must approve oil and gas leases does not raise a federal question." 653 F.3d at 1032.

A district court found federal-question jurisdiction in a recent case brought by a non-Indian property owner against the state of Washington and the Swinomish Indian Tribal Community ("Swinomish Tribe"). *Carney v. Washington et al.*, 551 F. Supp. 3d 1042, 1046–47 (W.D. Wash. 2021). *Carney* concerned a dispute over a strip of Swinomish reservation land surrounded by tidelands. *Id.* at 1046–47. These tidelands constitute tribal trust land. *Id.* at 1046.

The district court in *Carney* found federal-question jurisdiction because the plaintiff's claims "necessarily depend[ed] on the resolution of substantial federal issues." *Id.* at 1049. Determining the plaintiff's property boundary required pinpointing the location and scope of the tidelands. *Id.* at 1050. The tidelands at issue in *Carney* implicated Swonomish Tribe's unceded aboriginal rights protected by treaty, an executive order, and federal common law. *Id.* at 1052. The district court concluded that Swonomish Tribe's "aboriginal right to the tidelands qualified as 'an important issue of federal law that sensibly belongs in a federal court.'" *Id.* at 1051 (quoting *Grable*, 545 U.S. at 315).

11

*Carney*'s substantial federal issues are not present here. *Carney*, 551 F. Supp. 3d. at 1052. Kumar's claims against Schildts include breach of contract, unjust enrichment, and conspiracy in restraint of trade. (Doc. 1 at 9–15.) Kumar also seeks a declaratory judgment that Schildts were required to obtain the Secretary of the Interior's signature. (*Id.* at 15.) As in *K2 America*, the "mere fact that the Secretary of the Interior must approve" the sale of trust lands does not raise a federal question. 653 F.3d at 1032. Kumar does not contest the boundaries or size of tribal trust lands or otherwise challenge the "validity, construction, or effect" of a treaty, executive order, or other federal law. *Grable*, 545 U.S. at 315. Ultimately, none of Kumar's claims raises a substantial federal question.

Tribal court remains available as an appropriate forum in which Kumar may seek relief. *K2 America*, 653 F.3d at 1033. Kumar can seek review in federal court once he has exhausted his tribal court remedies. *Takeda Pharm. Am., Inc. v. Connelly*, No. CV 14-50-GF-BMM, 2015 WL 10985374, *2 (D. Mont. 2015) (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 20 (1987)).

## ORDER

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 12) is **GRANTED**.  The Clerk of Court is directed to enter Judgement accordingly. This case will be closed.

Dated this 19th day of September, 2022.

_____

Brian Morris, Chief District Judge
United States District Court